IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ANTHONY C. PRYOR,**          CASE NO. 2:07-cv-188

    **Petitioner,**          JUDGE HOLSCHUH
                                  MAGISTRATE JUDGE KEMP

v.

**MICHAEL SHEETS, Warden,**

    **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On February 15, 2002, the Fairfield County Grand Jury indicted appellant, Anthony Pryor, on four counts of rape in violation of R.C. 2907.02, four counts of complicity to commit rape in violation of 2907.02 and R.C. 2923.03, two counts of kidnapping in violation of R.C. 2905.01 and one count of abduction in violation of R.C. 2905.02. Said charges arose from various incidents involving appellant's wife, Gloria Pryor, and her children, appellant's stepchildren, a girl, K.S., born May 31, 1991, and a boy, J.S., born June 30, 1992.

A jury trial commenced on September 24, 2002. At the conclusion of the state's case-in-chief, appellant moved for a Crim.R. 29 acquittal on the two kidnapping counts and the one abduction count. The trial court granted the motion as to one of the kidnapping counts. The jury found appellant guilty of all remaining counts except for two of the four rape counts involving K.S. By judgment entry filed October 31, 2002, the trial court sentenced appellant to an aggregate term of three life sentences.

\*\*\*

Nurse Horner examined K.S. On direct, Nurse Horner explained she found K.S. had the following:

" \* \* \*a transection in her hymen at 6:00 o'clock. A transection is a tear in the hymen at 6:00 o'clock, extending entirely through the hymen, which resulted in basically no hymenal tissue being presented from 6:00 to 7:00 o'clock.\* \* \*And the hymen is the tissue around the opening to the vagina.

"And then she also had on her posterior fourchette, which is kind of where the outer folds of the labia come together to kind of protect the hymen, there was an avascular scar, meaning a scar without any blood vessels in it, from 6:00 to 7:00 o'clock extending to the vestibule." T. at 451-452.

On re-direct, Nurse Horner testified these findings were "consistent with a penetrating injury of the hymen" and "diagnostic of sexual abuse." T. at 481. To support this conclusion, Nurse Horner cited to the fact that studies show such findings are found in a small percentage of sexual abuse cases, and her clinic conducted a study over a six month period of time "of girls who gave history of penile penetration of the vagina, and only 25 percent of those girls had any physical findings." T. at 482-483.

On cross-examination, defense counsel extensively questioned Nurse Horner on the significance of lack of hymenal tissue at "6:00 to 7:00 o'clock." T. at 468-474.

\*\*\*

Both children testified appellant forced them to engage in sexual relations with each other....

\*\*\*

J.S. testified appellant forced him to engage in sexual relations with his mother. Originally, Mrs. Pryor denied this allegation. She changed her story after being questioned by police and changed her story at trial. Mrs. Pryor claimed appellant handcuffed and tied her to her bed which she struggled against. However, once J.S. entered the bedroom, she acquiesced to the sexual intercourse forced on J.S. by appellant. There were inconsistencies relative to her position on the bed.

\*\*\*

K.S. testified appellant touched her "private part" with his "private" while in the garage on King Street. T. at 342-343. She testified she was ten and one-half years old at the time. T. at 342. K.S. testified it happened about twenty times. T. at 345. She testified to appellant's pattern of waking her up in the middle of the night and having her come to his bed and making her take off her clothes. T. at 348-349. Appellant would put his lips on her "private" and she would attempt to wiggle away, but he held her down. T. at 349-350. He also handcuffed her at the ankle. T. at 351.

K.S. also testified appellant made her and her brother, J.S., engage in sexual relations together. T. at 355. She testified to penetration. T. at 356. She also testified to digital penetration by appellant. T. at 362.

Nurse Horner testified to a tear in the hymen of K.S. with the

3

result of no hymenal tissue at "6:00 to 7:00 o'clock" and an "avascular scar" on the posterior fourchette. T. at 451-452.

We note K.S. was subjected to vigorous cross-examination on the timing and location of the alleged incidents. T. at 384, 398-406.

J.S. testified to seeing appellant handcuff K.S. T. at 755-756. J.S. stated appellant locked himself, J.S. and K.S. in a bedroom together. T. at 756-757. J.S. testified appellant made him and K.S. take off their clothes, and made him get on top of K.S. and place his private on hers resulting in penetration. T. at 757-759, 820. J.S. also testified appellant made him take off his clothes while his mother was tied to a bed, and made him penetrate his mother. T. at 760-763, 802-804.

J.S. was also subjected to aggressive cross-examination. T. at 823-825. Defense counsel elicited testimony that J.S. had been punished by appellant on several occasions; he was punished for lying and K.S. was punished for sneaking food. T. at 784-792, 795.

Mrs. Pryor testified and for her part, had made a plea bargain. T. at 580-581. She testified to physical abuse by appellant of herself and the children. T. at 553, 558-559. She admitted to seeing appellant and K.S. having "sex together." T. at 555. She noticed K.S. crying and admonished appellant to stop. T. at 556. Mrs. Pryor recounted an incident where the children were with appellant in a locked bedroom. T. at 559. When questioned about it, appellant told her it was better she "didn't know what was on the other side of that door." T. at 560. Appellant admitted to Mrs. Pryor of teaching the children on "how to have sex together." T. at 560. She overheard appellant threaten the children and observed appellant handcuff K.S. to the bed overnight. T. at 568-572. Mrs. Pryor spoke of a time appellant handcuffed her to her bed and made J.S. engage in sexual relations with her. T. at 572-575.

Defense counsel also cross-examined Mrs. Pryor on her plea agreement and her dislike of her mother, and to inconsistencies in her statements. T. at 600-601, 605-608, 620-621. Defense

4

> counsel pointed out that she initially denied the sexual abuse, but later changed her story. T. at 628. Defense counsel also questioned her story about being tied to her bed "absolutely pinned" with her pelvic region staying "flat against the bed" as that would have made it impossible for J.S. to penetrate her. T. at 635, 653-655.
>
> ... Each witness corroborated the other's testimony. ... Each child gave the same account, and the accounts of K.S. were corroborated with physical findings.

*State v. Pryor,* 2004 WL 251659 (Ohio App. 5 Dist. February 2, 2004); *Exhibit 6 to Return of Writ*. Represented by new counsel, petitioner filed a timely appeal. He raised the following assignments of error:

> THE TRIAL COURT VIOLATED MR. PRYOR'S RIGHT TO DUE PROCESS AND A FAIR TRIAL WHEN IT OVERRULED HIS MOTION TO HIRE AN EXPERT TO REVIEW THE CASE TO DETERMINE WHETHER PROPER PROTOCOL HAD BEEN FOLLOWED IN INTERVIEWING THE COMPLAINING WITNESSES.
>
> THE TRIAL COURT VIOLATED ANTHONY PRYOR'S RIGHTS TO DUE PROCESS, CONFRONTATION, AND A FAIR TRIAL, AND ABUSED ITS DISCRETION, WHEN IT PERMITTED PREJUDICIAL TESTIMONY TO BE ADMITTED OVER THE OBJECTIONS OF DEFENSE COUNSEL.
>
> THE TRIAL COURT ABUSED ITS DISCRETION, AND DENIED ANTHONY PRYOR THE RIGHT TO DUE PROCESS AND A FAIR TRIAL, WHEN IT REFUSED TO PERMIT A WITNESS TO GIVE AN OPINION CONCERNING WHETHER THE COMPLAINING WITNESSES WERE COACHED.
>
> THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND VIOLATED ANTHONY PRYOR'S RIGHTS TO DUE PROCESS, TO CONFRONT HIS ACCUSERS, AND A FAIR TRIAL WHEN IT PROHIBITED TRIAL COUNSEL FROM REVIEWING THE COMPLAINING WITNESS'S STATEMENTS.

> THE TRIAL COURT VIOLATED ANTHONY PRYOR'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF GUILT AGAINST HIM, WHEN THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> THE TRIAL COURT ERRED AS A MATTER OF LAW, AND VIOLATED MR. PRYOR'S RIGHT TO DUE PROCESS, WHEN IT FAILED TO INFORM HIM THAT HE WAS SUBJECT TO POST-RELEASE CONTROL UPON HIS RELEASE FROM PRISON.

*See id.*; *Exhibit 3 to Return of Writ.* On February 2, 2004, the appellate court affirmed the judgment of the trial court, but sustained petitioner's sixth assignment of error, and remanded the case to the trial court for re-sentencing on the issue of post-release control only. *See id; Exhibit 6 to Return of Writ.* Still represented by counsel, petitioner filed a timely appeal to the Ohio Supreme Court. He raised the following propositions of law:

> 1. The defendant's right to a fair trial, due process of law and the right to present a defense is violated when the trial court denies an indigent defendant's motion for the appointment of an expert on interview protocol of child reporting sexual abuse to assist in preparation of trial. Article I, Section 10 and 16 of the Ohio Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.
>
> 2. A lay witness may testify to opinions "which are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue." Evid.R. 701.
>
> 3. Expert opinion testimony may not be admitted in regard to facts or data in a particular case unless the facts or data had been perceived by the expert or admitted into evidence. Evid.R. 703.
>
> 4. When examining a witness' prior statement for inconsistencies pursuant to Crim.R. 16(B)(1)(g), the trial court

6

> must provide a copy of the witness' prior statement to the prosecutor and defense counsel to allow the advocates to actively participate in the review of the statement.

*Exhibit 7 to Return of Writ.* On June 9, 2004, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. *State v. Pryor*, 102 Ohio St.3d 1472 (Ohio 2004); *Exhibit 9 to Return of Writ.*

Petitioner also pursued post conviction relief. On August 9, 2003, he filed a post conviction petition in the state trial court. His claims are summarized below as follows:

> 1. Denial of right to present a defense due to the trial court's refusal to appoint a defense expert.
>
> 2. Denial of the effective assistance of counsel due to counsel's failure to call an expert witness to rebut prosecution witness Gail Horner's testimony regarding her observations during a physical examination of the alleged victim.
>
> 3. Denial of the effective assistance of counsel due to counsel's failure to ensure that medical and psychological records were delivered to the trial court for in camera review.
>
> 4. Denial of effective assistance of counsel due to counsel's failure to object to the trial court's imposition of consecutive life sentences in violation of *Blakely v. Washington*, 542 U.S. 296 (2004).

*Exhibit 10 to Return of Writ.* On April 26, 2005, the trial court denied petitioner's post conviction petition. *Exhibit 13 to Return of Writ.* Again represented by counsel, petitioner filed a timely appeal. He asserted the following assignments of error:

> I. THE TRIAL COURT ERRED IN DISMISSING PETITIONER'S POSTCONVICTION CLAIMS ON THE

7

> GROUND THAT ALL OF THE CLAIMS ARE BARRED BY RES JUDICATA.
>
> II. THE TRIAL COURT ERRED IN DISMISSING THE SUBSTANTIVE GROUNDS FOR RELIEF RAISED IN PETITIONER'S POSTCONVICTION PETITION WITHOUT ALLOWING PETITIONER TO PRESENT AT AN EVIDENTIARY HEARING THE EVIDENCE ACCOMPANYING THE PETITION.

*See State v. Pryor,* 2005 WL 3446357 (Ohio App. 5 Dist. December 7, 2005); *Exhibit 17 to Return of Writ.* On December 7, 2005, the appellate court affirmed the trial court's dismissal of petitioner's post conviction petition. *See id.* Petitioner filed a timely appeal, in which he again raised the same claims. *Exhibit 18 to Return of Writ.* On April 26, 2006, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. *State v. Pryor*, 109 Ohio St.3d 1425 (Ohio 2006); *Exhibit 20 to Return of Writ.* Petitioner pursued additional post conviction relief without success. *See State v. Pryor*, 2006 WL 3718290 (Ohio App. 5 Dist. December 7, 2006); *State v. Pryor*, 113 Ohio St.3d 1468 (Ohio 2007). However, the claims raised therein are not presented for federal habeas corpus review, and such action therefore will not be addressed here.

On March 6, 2007, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution based upon the following grounds:

> 1. Petitioner was denied his right to a fair trial, due process of law, and the right to present a defense in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the trial court denied his motion for appointment of an expert on interview protocol of children

8

> reporting sexual abuse to assist in the preparation for trial.
>
> 2. Denial [of] Sixth and Fourteenth Amendments to the United States Constitution and the [] effective assistance of counsel when trial counsel failed to call an expert witness to rebut the testimony of State's witness Gail Hornor in regard to her observations made during the physical exam of the alleged victim.
>
> 3. Denial of the Sixth and Fourteenth Amendments to the United States Constitution and the [effective assistance of counsel].
> \*\*\*
> Petitioner was denied the effective assistance of counsel when trial counsel failed to ensure that certain medical and psychological records were delivered to [the trial court] for in camera review.

It is the position of the respondent that claim one is without merit, and that claims two and three are procedurally defaulted; however, petitioner has withdrawn claims two and three from federal habeas corpus review, and requests to proceed solely on claim one. *See Traverse*, at 9.

## CLAIM ONE

In claim one, petitioner asserts that he was denied his right to the assistance of an expert witness in preparing his defense, in violation of *Ake v. Oklahoma*, 470 U.S. 68. The state appellate court rejected this claim as follows:

> Appellant claims the trial court erred in denying his request for an expert witness at state's expense. We disagree.
>
> The appointment of an expert rests within the trial court's sound discretion. *State v. Tibbetts,* 92 Ohio St.3d 146, *2001-Ohio-132*. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or

9

unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983) 5 Ohio St.3d 217, 450 N.E.2d 1140. We note harmless error is described as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A).

Appellant argues he should have been appointed an expert witness to test whether the questioning protocol utilized by the arresting officer, Detective Gary Pierce of the Fairfield County Sheriff's Department, in interviewing the children unduly prejudiced appellant. In support of his position, appellant argues *State v. Gersin,* 76 Ohio St.3d 491, *1996-Ohio-114,* is controlling. We find this case is not controlling for the following reasons. In *Gersin,* the trial court found an expert witness could not testify on the proper protocol in interviewing children who are suspected victims of sexual abuse. The Supreme Court of Ohio found the use of expert testimony as to proper interviewing protocol was relevant and admissible.

In this case, the trial court denied appellant's request for a court-appointed expert, finding the protocol employed was valid. On August 9, 2003, the trial court held an evidentiary hearing on the admissibility of such evidence, or as defense counsel termed it a "taint hearing." August 9, 2002 T. at 15. Detective Pierce testified at this hearing and explained his training in proper interviewing techniques of alleged sexual abuse victims. *Id* . at 18-21, 668 N.E.2d 486. Defense counsel questioned Detective Pierce's use of audiotape as opposed to videotape in recording the interviews. *Id.* at 24-25, 668 N.E.2d 486. Defense counsel argued by using audiotape over videotape, it is difficult to assess whether the interviewing of the children and the suspicion of leading questions prior to the interviews asked by the maternal grandmother and social worker improperly tainted Detective Pierce's interviews.

Despite this argument, the trial court made a thorough analysis of the facts before denying the request. The trial court found the children were not of presumed incompetent years, they were eight and ten years old, their initial report was made to their maternal grandmother, Detective Pierce used open-ended questions and the expert could not testify as to credibility. *Id.*

> at 47-48, 668 N.E.2d 486; Entry filed August 20, 2002. The trial court personally reviewed the children's statements (Id. at 49-52, 668 N.E.2d 486), and stated its conclusions for denying the requested expert as follows:
>
> "Based upon the totality of these statements, the Court would find that essentially Detective Pierce's protocol was as he testified to. I do not see any improper inducements or threats against these minor victims in these statements that would lead the Court to feel that a serious issue has been raised about the protocol that was used in the interviewing of these children." T. at 52.
>
> Given the trial court's extensive review, we cannot find the trial court abused its discretion in denying appellant's request. Further, even if it were error to deny the expert, we find that absent any proffered testimony on the disputed protocol, we cannot find any undue prejudice under the harmless error rule. The children testified, were examined and cross-examined, and Detective Pierce never testified as to the children's statements nor did he testify as to their credibility.
>
> Assignment of Error I is denied.

*State v. Pryor, supra*, 2004 WL 251659.

The state court's decision is binding on this Court unless that decision is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

11

> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).  Additionally,

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(e)(1).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. 362, 412-13 (2000).

Petitioner contends that this Court must conduct a *de novo* review of petitioner's claim, because the state courts did not address the claim on the merits, but dismissed the claim on the basis of *res judicata*.  *Traverse*, at 5.  This Court does not agree.  The state appellate court refused to address petitioner's claim on the merits in post conviction proceedings, *see State v. Pryor, supra*, 2005 WL 3446357, but as discussed, *supra,* rejected his claim on the merits on direct appeal.  *State v. Pryor, supra*, 2004 WL 251659.  Therefore, this Court conducts its review under the deferential standard contained in the AEDPA.  For the

reasons that follow, petitioner's claim nonetheless lacks merit.

To the extent that petitioner raises an issue regarding the alleged violation of state law, such claim fails. A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Such are not the circumstances here.

Further, federal habeas review of state court evidentiary rulings is extremely limited. *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990). Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *see also Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983).

Petitioner asserts that he was denied due process and the right to present a defense because the state trial court refused to provide the appointment of a defense expert at state

courts to challenge the interview protocol used by the State's experts, in violation of *Ake v. Oklahoma, supra*, 470 U.S. at 68. This claim fails.

In *Ake v. Oklahoma, supra*, the United States Supreme Court held that, where a defendant demonstrates his sanity at the time of the offense is a significant factor at trial, he must be provided a psychiatrist to assist his defense. *Id.*, at 83. The Supreme Court in *Ake* further held that, in the sentencing phase of capital cases where the prosecution presents evidence regarding the defendant's future dangerousness, due process likewise requires the appointment of expert assistance to the defense. *Id.* The Supreme Court reasoned in *Ake* that due process requires the defendant be provided with expert assistance under the foregoing circumstances in order to ensure "meaningful access to justice." *Id.*, at 77.

> We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense. Thus, while the Court has not held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, *see Ross v. Moffitt*, 417 U.S. 600... (1974), it has often reaffirmed that fundamental fairness entitles indigent defendant's to "an adequate opportunity to present their claims fairly within the adversary system," *id.*, at 612.... To implement this principle, we have focused on identifying the "basic tools of an adequate defense or appeal," *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971), and we have required that such tools be provided to those defendants who cannot afford to pay for them.

> To say that these basic tools must be provided is, of course, merely to begin our inquiry. In this case we must decide whether, and under what conditions, the participation of a psychiatrist is important enough to preparation of a defense to require the State to provide an indigent defendant with access to competent psychiatric assistance in preparing the defense. Three factors are relevant to this determination. The first is the private interest that will be affected by the action of the State. The second is the governmental interest that will be affected if the safeguard is to be provided. The third is the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided. *See Little v. Streater, supra,* 452 U.S. at 6, 101 S.Ct. at 2205; *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

*Id.*, at 77.  Under *Ake,* the United States Court of Appeals for the Sixth Circuit and other courts require the appointment of other types of defense experts at state expense:

> This circuit and others have extended *Ake's* command of expert assistance to instances beyond those where a defendant's mental condition is at issue at trial, and beyond those of capital cases. *See, e.g., Glenn v. Tate*, 71 F.3d 1204, 1211 (6th Cir.1995) (holding that the capital defendant was prejudiced and thereby denied the effective assistance of counsel by his counsel's failure to seek expert testimony at sentencing regarding the defendant's organic brain problem); *Starr v. Lockhart,* 23 F.3d 1280, 1289 (8th Cir.1994) (noting that Ake explains that "due process requires access to an expert who will conduct, not just any, but an appropriate examination," and finding that the petitioner's "exam was inappropriate because it did not delve into the mitigating questions essential to [the petitioner]"); *Terry v. Rees*, 985 F.2d 283, 284 (6th Cir.1993) (holding that a defendant was denied an opportunity to present an effective defense when the trial court denied his request for an independent pathologist to challenge the government's position as to the cause of the victim's death); *Dunn v. Roberts*, 963 F.2d 308, 313 (10th Cir.1992) (finding that under *Ake,* the denial of an expert witness to determine whether the

> petitioner's mental state was affected by battered spouse syndrome at the time of the offense precluded the petitioner from presenting an effective defense); *Little v. Armontrout*, 835 F.2d 1240, 1243 (8th Cir.1987) (finding that the rule of *Ake* extends to experts in areas beyond that of psychiatry and to instances where the death penalty is not involved, and holding that "the denial of a state-provided expert on hypnosis to assist [the] indigent defendant rendered the trial fundamentally unfair" thereby requiring the conviction to be set aside).

*Powell v. Collins,* 332 F.3d 376, 390 n.5 (6th Cir. 2003). However, under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal habeas court may grant relief only under the decisions of the United States Supreme Court, not based upon dicta, or on the decisions of the United States Courts of Appeals. *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003), citing *Williams v. Taylor, supra,* 529 U.S. at 412; *Mitzel v. Tate*, 267 F.3d 524, 530-31 (6th Cir. 2001); 28 U.S.C. §2254(d)(1). There is no Supreme Court or Court of Appeals decision that directly supports petitioner's claim of entitlement to a "questioning protocol expert."

The Supreme Court in *Ake* limited its holding to the circumstances under which the appointment of a defense expert psychiatrist is required to assist the defense at trial or in the sentencing phase of capital cases. The Supreme Court has not extended its holding in *Ake* to require the appointment at state expense of other types of defense experts, and in *Caldwell v. Mississippi*, 472 U.S. 320, 323 n. 1 (1985), declined to address the issue.

> In light of the language of *Ake* and the Court's reservation in *Caldwell,* there is disagreement over whether *Ake* requires the provision of expert services beyond psychiatric services necessary to present an insanity defense. *Compare, e.g., Terry v. Rees,* 985 F.2d 283, 284 (6th Cir.1993) (petitioner denied an

16

> opportunity to present an effective defense by failure to appoint independent pathologist), *with Baxter v. Thomas,* 45 F.3d 1501, 1511 n. 24 (11th Cir.1995) *and Moore v. Kemp,* 809 F.2d 702, 736-37 (11th Cir.1987) (en banc) (Hill, J., concurring in part and dissenting in part) (declining to extend *Ake* to non-psychiatric experts).
>
> Under the AEDPA... the question is not whether this Court, or the Sixth Circuit, would extend *Ake* to require the provision of non-psychiatric experts. Rather, the question is whether *Ake* itself clearly establishes petitioner's right to the appointment of such experts. In a number of pre-AEDPA cases, courts have held that extending *Ake* to non-psychiatric experts would amount to a "new rule" of constitutional law which could not be applied on collateral review under the Supreme Court's decision in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See Gray v. Thompson,* 58 F.3d 59, 66 (4th Cir.1995), *vacated on other grounds,* 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Jackson v. Ylst,* 921 F.2d 882, 885-86 (9th Cir.1990). The *Teague* rule is "the functional equivalent" of the clearly established law requirement of § 2254(d)(1), *see Williams,* 529 U.S. at 379 (opinion of Stevens, J.), and thus a rule which fails to satisfy *Teague* will also fail to satisfy § 2254(d)(1). *See id.* at 380 (opinion of Stevens, J.); *id.* at 412 (opinion of O'Connor, J., for the Court). *See generally, Williams v. Cain,* 229 F.3d 468, 474-75 (5th Cir.2000) (discussing relationship between *Teague* and § 2254(d)(1)). Thus, petitioner's asserted right to the appointment of non-psychiatric experts was not clearly established law under § 2254(d)(1) at the time of his conviction. *See Brewer v. Cason,* No. 1:05-cv-118, 2006 WL 3103212, at *3 (W.D.Mich. Oct.31, 2006); *Tanner v. Yukins,* No. 04-CV-71155, 2005 WL 2994353, at *16 (E.D.Mich. Nov.7, 2005) (Roberts, J.); *Weeks v. Angelone,* 4 F.Supp.2d 497, 521-22 (E.D.Va.1998), *aff'd,* 176 F.3d 249, 264-65 (4th Cir.1999), *aff'd on other grounds,* 528 U.S. 225, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000).

*Willis v. Lafler,* 2007 WL 3121542 (E.D. Michigan October 24, 2007); *see also Tanner v. Yukins*, 2005 WL 2994353 (E.D. Michigan November 7, 2005)(same). Therefore, *Ake* does not provide petitioner the relief he seeks here.

Further, assuming *arguendo*, that *Ake* applied to nonpsychiatric expert witnesses, the record fails to reflect that the Ohio Court of Appeals unreasonably applied *Ake* in denying petitioner relief. *See Mason v. Mitchell*, 95 F.Supp.2d 744 (N.D. Ohio May 9, 2000),

> As the Court explained in *Ake,* a criminal defendant is not entitled to whatever expert assistance he desires, but only to access to the "basic tools of an adequate defense" so that he has "an adequate opportunity to present [his] claims fairly within the adversary system." *Ake,* 470 U.S. at 77 (internal quotations omitted). In petitioner's case, counsel's cross-examination ... provided petitioner "ample opportunity....

*Willis v. Lafler, supra. See also Mason v. Mitchell*, 320 F.3d 604, 615 (6th Cir. 2003), affirming the Ohio Supreme Court's decision in *State v. Mason*, 82 Ohio St.3d 144, 150 (Ohio 1998), that non-psychiatric expert assistance should be provided "only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial."

Here, the trial court denied petitioner's request only after an extensive hearing on the issue and upon concluding that no serious issue had been raised about the interview protocol. *See State v. Pryor,* 2004 WL 251659. Further, as was noted by the state appellate court, defense counsel conducted a vigorous cross examination of the witnesses against him. *See id.* Petitioner made no showing in the state court, and has made none here, that the expert he was unable to retain would have provided any testimony undermining the state's case. Thus, it was not unreasonable for the state courts to conclude that, even if *Ake* requires the state to provide an indigent defendant with this type of expert assistance in

18

a case where the expert's testimony would materially assist the defendant, this was not such a case. Consequently, the state court's decision on this issue passes muster under the AEDPA's standard of review.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge

19